UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ALEXIUS TAPIA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>WILLIE PABEY, individually and in his official )<br>capacity as an East Chicago Police Officer and )<br>the CITY OF EAST CHICAGO, INDIANA, )<br>)<br>Defendants. ) | CAUSE NO.: 2:05-CV-175-RL-PRC |

**OPINION AND ORDER**

This matter is before the Court on a Motion to Disqualify the Law Firm of Smith & DeBonis, LLC and Motion for Protective Order or, in the Alternative, Motion for Discovery on the Extent of Confidential and Privileged Information Obtained in Prior Representations and Motion to Stay Proceedings [DE 14], filed by the Defendants on October 18, 2005. On October 27, 2005, the Plaintiff filed a Memorandum in Opposition, and on November 9, 2005, the Defendants filed a Reply.

**BACKGROUND**

On October 26, 2004, George Pabey won a special Democratic mayoral primary election against Robert A. Pastrick, who had been Mayor of East Chicago ("City" or "City of East Chicago") since January 1, 1972. Under the administration of Mayor Pastrick, the law firm of Smith & DeBonis, LLC ("Smith & DeBonis"), and specifically Attorney Anthony Debonis, Jr., served as the City of East Chicago's primary outside counsel, having served in that role for 27 of the 32 years during which Pastrick was Mayor of the City. The firm's representation of the City included

numerous general matters as well as numerous police-related matters. Among the Firm's representations were at least ten actions, during 1988-2003, alleging violations of civil rights (police brutality or unlawful arrest) by individual police officers, the City's Police Department and/or the City pursuant to § 1983.

On December 29, 2004, as the Democratic Party candidate, George Pabey defeated his Republican challenger in the special general election for Mayor of the City of East Chicago. Pabey was sworn in and qualified as Mayor on December 29, 2004, and immediately took control of the Mayor's office.

One of Mayor Pabey's initial acts as Mayor was the appointment of Nathaniel Ruff and Carmen Fernandez as Corporation Counsel, replacing Frank Callahan who had served as Corporation Counsel under Mayor Pastrick. On December 30, 2004, Attorney DeBonis wrote to Attorney Ruff, informing him that he was withdrawing from his representation of the City. Attorney Ruff acknowledged this letter by a letter of January 3, 2005, asking that Attorney DeBonis turn over the files. Attorney DeBonis responded in turn by letter, indicating the active matters from which he had withdrawn and claiming a retaining lien under state law on the files pending payment. However, Attorney DeBonis' services as attorney for the East Chicago Sanitary District, a distinct governmental entity from the City, continued until his resignation on February 21, 2005, as part of a comprehensive settlement agreement with the City acting through Mayer Pabey, Attorney Ruff, and Attorney Fernandez.

On February 7, 2005, Attorney Fernandez wrote to Smith & DeBonis to inform the firm that the City objected on ethical grounds to Smith & DeBonis' representation of Plaintiff Tapia in an

2

action against the City. Attorney Terrance Smith, of Smith & DeBonis, responded that there was no conflict and that the firm would continue to represent citizens of East Chicago.

On March 5, 2005, a settlement agreement was executed in a civil action brought by Smith & DeBonis as attorneys against Mayor Pabey (the City was not a named defendant) on behalf of five former Sanitary District Commissioners in connection with their dismissals by Mayor Pabey ("*Guzman* Settlement Agreement"). The *Guzman* Settlement Agreement included a provision addressing conflicts of interest by Smith & DeBonis in litigation against Mayor Pabey and provided, in relevant part:

> The City of East Chicago and its Sanitary District acknowledges that they have no information or knowledge that the District's long-time attorney, Anthony DeBonis, Jr., has engaged in representing any conflicting interests in connection with his work as Sanitary District attorney, and in connection with his occasional work as attorney for the City of East Chicago. The said City and District waive, and shall not in the future assert, any claim of conflict of interest against Mr. DeBonis, whether known or not known, in connection with his future representation of persons with claims or causes arising after December 29, 2004, which are adverse to the City; provided, however, that this waiver shall not apply, if and in the event the interest of the City or District would be compromised or jeopardized by counsel's use of any privileged or confidential information he acquired during and by means of, his former representation of either the City or the District. By "conflict of interest" is meant those conflicts outlined, particularized and prohibited under the Indiana Rules of Professional Conduct Nos. 1.7 (especially sup-paragraph 9), and 1.9 and 1.11. Attorney DeBonis will move to withdraw his appearance in all pending East Chicago Sanitary District Litigation.

Def. Br., Exh. E.

Between April 13, 2005, and July 21, 2005, ten other civil actions were filed in state court on behalf of Plaintiffs by Smith & DeBonis and were subsequently removed to the District Court for the Northern District of Indiana.[1] Generally, the complaints allege violations of the Plaintiffs'

---

[1] The cases are *Sandra Hurubean v. George Pabey, et al.*, 2:05-cv-187-RL-APR; *Edward Skrundz v. George Pabey, et al.*, 2:05-cv-188-PS-PRC; *Lilia Ramos v. George Pabey, et al.*, 2:05-cv-189-PS-PRC; *Jose F. Valdez III v. George Pabey, et al.*, 2:05-cv-190-RL-PRC; *Kevin Knight v. George Pabey, et al.*, 2:05-cv-191-JTM-PRC; *Myria*

civil rights by Mayor George Pabey, Charles Pacurar, and the City of East Chicago under 42 U.S.C. § 1983 in relation to the plaintiffs' termination from their employment by Mayor Pabey shortly after he took office.  The Plaintiffs allege that the terminations were motivated by political retaliation as each was a political supporter of former Mayor Pastrick.  Certain Caucasian and African-American Plaintiffs also claim race discrimination, alleging that Pabey fired them in order to replace them with Hispanic supporters.

Unlike the other actions, the Complaint in this matter, which was filed on May 6, 2005, alleges that the Plaintiff's Fourth Amendment rights were violated due to the unreasonable seizure of his person with the use of excessive force.  Specifically, the Complaint alleges the following.  On January 21, 2005, Officers of the East Chicago Police Department responded to a shooting in East Chicago, Indiana, and proceeded to the Plaintiff's home allegedly following footprints in the snow that they claimed to be from the shooter.  Cmplt. ¶¶ 6, 9.  The officers attempted to enter the Plaintiff's home by kicking in the back door.  *Id*. at ¶ 10.  Upon hearing the officers kicking at his back door, the Plaintiff saw numerous squad cars in front of his home and opened the front door to find out what was happening.  *Id*. at ¶ 11.  The officers entered the Plaintiff's home, ransacked the home, and placed the Plaintiff under arrest for the shooting without any evidence that he was involved in the shooting.  *Id*. at ¶ 12.  The Plaintiff was transported to the East Chicago Police Department wearing only a t-shirt and boxer shorts and was handcuffed to a wall.  *Id*. at ¶ 13.  Thereafter, Willie Pabey, who had been off-duty and drinking alcohol, entered the station and engaged in a verbal altercation with the Plaintiff, asserting that the Plaintiff had been the shooter and

---

*DeLaCruz v. George Pabey, et al.*, 2:05-cv-192-RL-APR; *Marcelo Garcia, et al. v. George Pabey, et al.*, 2:05-cv-217-RL-PRC; *Rosario C. Valdez v. George Pabey, et al.*, 2:05-cv-255-RL-PRC; *Dominic A. Guzman v. George Pabey, et al.*, 2:05-cv-265-RL APR; and *Arcides Santiago v. George Pabey, et al.*, 2:04-cv-282-PS-APR.

that the Plaintiff would be going to prison. *Id*. at ¶¶ 14-15. During the altercation, Willie Pabey used excessive force against the Plaintiff who was handcuffed to the wall, which included punching him in the head in an attempt to get the Plaintiff to confess to the shooting. *Id*. at ¶ 17. These events were caught on video tape by the surveillance system maintained by the Police Department for the jail. *Id*. at ¶ 20. The Plaintiff denied his involvement in the shooting throughout. *Id*. at ¶ 16. The Plaintiff was released without any charges being brought against him. *Id*.

On June 23, 2005, counsel for the Defendants sent a letter to Smith & DeBonis advising of the Defendants' belief that there were substantial grounds for moving to disqualify the firm for its representation of the Plaintiff in this case. Attorney DeBonis responded that, under the circumstances, he would not discuss any matter with the Defendants involving issues of professional responsibility.

The Defendants in the ten employment cases filed a motion to disqualify Smith & DeBonis in each case. On September 13, 2005, and September 14, 2005, the undersigned and Magistrate Judge Andrew Rodovich, respectively, entered orders denying the motions to disqualify. The Defendants filed objections to the orders on September 27, 2005, in each of the cases. On December 27, 2005, District Court Judge Rudy Lozano overruled the objections.

On October 18, 2005, the Defendants filed the instant Motion to Disqualify. The Plaintiff filed a Memorandum in Opposition on October 27, 2005, and the Defendants filed a Reply on November 9, 2005.

## ANALYSIS

In the motion, the Defendants seek an Order of the Court (1) disqualifying the law firm of Smith & DeBonis and its individual members from representing the Plaintiff in this case because of their prior representation of the City of East Chicago in numerous other cases and with respect to police matters specifically; (2) prohibiting Smith & DeBonis and its individual members from speaking to any plaintiff, any other law firm or individual attorney regarding the substance of the claims raised in this matter; or (3) alternatively, authorizing discovery on the extent of the confidential and privileged information obtained through the firm's prior representation of the City of East Chicago; and (4) staying proceedings pending the resolution of the issue of disqualification. The Court will address each in turn.

### A.  Motion to Disqualify

In the Motion to Disqualify, the Defendants argue that Smith & DeBonis is barred from representing the City in this case because the representation is "substantially related" to the firm's defense of the City in other cases, specifically to the defense of other police-related matters. The Defendants further assert that nothing in the *Guzman* Settlement Agreement permits Smith & DeBonis to represent the Plaintiff in this case. Smith & DeBonis generally responds that it is not barred from representing the Plaintiff in this matter and that the terms of the *Guzman* Settlement Agreement authorize this representation.

6

*1. Substantially Related*

The Seventh Circuit has cautioned that disqualification is a prophylactic device employed to protect the attorney-client relationship and is a "drastic measure which courts should hesitate to impose except when absolutely necessary." *Cromley v. Board of Ed. of Lockport Township High School Dist. 205*, 17 F.3d 1059, 1066 (7th Cir. 1994) (quoting *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982)).  Motions to disqualify "should be viewed with extreme caution for they can be misused as techniques of harassment." *Freeman*, 689 F.2d at 722.  However, the Seventh Circuit has instructed courts to resolve doubts in favor of disqualification. *See Exterior Sys., Inc. v. Noble Composites, Inc.*, 175 F. Supp. 2d 1112, 1115 (N.D. Ind. 2001) (citing *United States v. Goot*, 894 F.2d 231, 235 (7th Cir. 1990)).

Under Northern District of Indiana Local Rule 83.5, "[t]he Rules of Professional Conduct, as adopted by the Indiana Supreme Court, and the Standards for Professional Conduct, as adopted by the Seventh Circuit, shall provide standards of conduct for those practicing in this court."  L.R. 83.5.  Turning to the Indiana Rules of Professional Conduct, Rule 1.9(a) provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter:
> (a) represent another person in the same or a *substantially related matter* in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

Ind. R. Prof. Cond. 1.9 (emphasis added); *see also Jones & Henry, Engineers, Ltd. v. Town of Orland, Indiana*, 942 F. Supp. 1202, 1206 (N.D. Ind. 1996).  "In addition, a firm 'may not represent a person in the same or a substantially related matter if [the firm] knows . . . that [one of its attorneys has] previously represented a client whose interests are materially adverse to that person.'"  *Jones & Henry*, 942 F. Supp. at 1206 (citing Ind. R. Prof. Cond. 1.9(b)).

7

In addition to the Rule, the Seventh Circuit Court of Appeals has adopted a common law analysis to determine attorney disqualification. First, the Court must assess whether a "substantial relationship" exists between the subject matter of the prior and present representations. *Cromley*, 17 F.3d at 1064 (quoting *Schiessle v. Stephens*, 717 F.2d 417, 420 (7th Cir. 1983) (citing *LaSalle Nat'l Bank v. Lake County*, 703 F.2d 252, 255-56 (7th Cir. 1983)); also citing *Goot*, 894 F.2d at 235; *Freeman*, 689 F.2d at 722; *Westinghouse Elec. Corp. v. Gulf Oil Corp.*, 588 F.2d 221, 225 (7th Cir. 1978)). To determine whether a "substantial relationship" exists between the subject matter of the prior and present representations, the Court conducts a separate three-step inquiry:

> First, the trial judge must make a factual reconstruction of the scope of the prior legal representation. Second, it must be determined whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters. Third, it must be determined whether that information is relevant to the issues raised in the litigation pending against the former client.

*Jones & Henry*, 942 F. Supp. at 1206 (quoting *LaSalle*, 703 F.2d at 255-56). The Seventh Circuit has elaborated that "the determination of whether there is a substantial relationship turns on the possibility, or appearance thereof, that confidential information might have been given to the attorney in relation to the subsequent matter in which disqualification is sought." *Id*. (citing *Freeman*, 689 F.2d at 722 n.10)). The purposes of the substantial relationship test are (1) to prevent disclosure of client confidences; (2) to protect a client's interest in the loyalty of counsel; and (3) to prevent the appearance of conflict of interest that is difficult to dispel in the eyes of the public, the bench, and the bar. *Exterior Sys.*, 175 F. Supp. 2d at 1116 (citing *Analytica, Inc. v. NPD Research Inc.*, 708 F.2d 1263, 1266 (7th Cir. 1983)).

8

If the Court finds that a substantial relationship does exist, then a rebuttable presumption arises that the attorney received confidential information during the prior representation and the Court engages in the final two steps of the analysis:

> If we conclude a substantial relationship does exist, we must next ascertain whether the presumption of shared confidences with respect to the prior representation has been rebutted. If we conclude this presumption has not been rebutted, we must then determine whether the presumption of shared confidences has been rebutted with respect to the present representation. Failure to rebut this presumption would also make the disqualification proper.

*Cromley*, 17 F.3d at 1064 (quoting *Schiessle*, 717 F.2d at 420 (citing *LaSalle*, 703 F.2d at 255-56); also citing *Goot*, 894 F.2d at 235; *Freeman*, 689 F.2d at 722; *Westinghouse*, 588 F.2d at 225). In contrast, however, when an entire firm switches sides, as in the present case with Smith & DeBonis, once a substantial relationship has been found, it is irrebuttably presumed that counsel had access to confidential information and the firm must be disqualified. *Analytica*, 708 F.2d at 1267; *Exterior Sys.*, 175 F. Supp. 2d at 116 (citing *Monon Corp. v. Wabash Nat'l Corp.*, 764 F. Supp. 1320, 1323 (N.D. Ind. 1991); *Flo-Con Sys., Inc. v. Servsteel, Inc.*, 759 F. Supp. 456, 459 (N.D. Ind. 1990) ("[W]here a law firm which received confidences from one client now represents a second client in a substantially related matter and those clients now oppose each other, the presumption that the confidences were shared becomes irrebuttable and the law firm must be disqualified.").

The Court must first determine whether Smith & DeBonis' prior representation of the City of East Chicago is "substantially related" to the firm's representation of the Plaintiff in this case against the City. The Court recognizes that Smith & DeBonis did not previously represent the City against its current client in this case, Tapia. However, the subject matter of the prior representation is substantially related to that of the current representation, and the Court finds that confidential or privileged information, such as that relating to the City's defense in similar cases, could be disclosed

9

to, or used for, Smith & DeBonis' current client.  *See Flo-Con Sys., Inc. v. Servsteel, Inc.*, 759 F. Supp. 456, 460 (N.D. Ind. 1990).

First, this case differs in a fundamental way from the employment cases in which the Court recently found that Smith & DeBonis should not be disqualified as counsel for the Plaintiffs.  In those cases, the Court reasoned that Smith & DeBonis had never represented the Pabey Administration, which had set the policy and made the decisions to fire the various plaintiffs in those cases, and that any defense strategies would be created by the new attorneys for the new administration.  Although the information acquired in the prior representation in those cases may have been rendered obsolete by the passage of time, *see* Ind. R. Prof. Cond. 1.9, comment 3, such is not the case in the present controversy.

In this case, the Complaint alleges that the Police Department and the City failed to train their police officers on how to make reasonable seizures under the Fourth Amendment.  Based on the timing of the change in administration (December 29, 2004), and the date on which the police officers are alleged to have violated the Plaintiff's rights (January 21, 2005), it appears that the officers had been hired and trained under the Pastrick Administration.  Therefore, the factual basis of any failure to train claim would be known to Smith & DeBonis.  Specifically, the City, as the Defendant in this case, is prejudiced by its prior defense by Smith & Debonis on just such a claim in *Berrios v. City of East Chicago*, 2:03cv424, in which District Court Judge Sharp granted summary judgment in favor of the City on the federal claims.  As counsel for the Plaintiff in the present case, Smith & DeBonis will have the benefit of specific knowledge gained and strategies used in that and other prior representations.  Although strategy may change somewhat with new counsel representing

the City in this case, the underlying factual basis remains the same, which narrows the possible legal strategies and gives Smith & DeBonis an unfair strategic advantage.

Moreover, Smith & DeBonis may have confidential information from the City's perspective regarding prior complaints against various individual police officers, the Police Department's written and unwritten investigatory practices and strategies, and information not disclosed to the public or made known during the course of a public case regarding the existence and details of claims against the Police Department or its individual officers that may not have been made public due to settlement or other private resolution. The firm's representation of the City lasted for several years, during which time Attorney DeBonis and the firm Smith & DeBonis would have gained valuable knowledge about the policies, procedures, personnel, and history of both the City and the Police Department.

Finally, Smith & DeBonis' response to the City's Motion to Disqualify does not address the firm's representation of the City in police-related matters, which is what distinguishes the disqualification in this case from the non-disqualifications in the recent prior employment cases. In fact, the response brief is almost identical to its oppositions filed in the prior employment cases and addresses issues raised in the prior cases but not at issue here.

Therefore, a substantial relationship exists between Smith & DeBonis' former representation of the City and its current representation of Plaintiff Tapia in the present controversy. Because the entire firm of Smith & DeBonis has switched sides, the irrebuttable presumption that counsel had access to confidential information mandates that the firm be disqualified. *See Analytica*, 708 F.2d at 1267; *Exterior Sys.*, 175 F. Supp. 2d at 116 (citing *Monon Corp. v. Wabash Nat'l Corp.*, 764 F. Supp. 1320, 1323 (N.D. Ind. 1991); *Flo-Con Sys.,* 759 F. Supp. at 459.

*2.* Guzman *Settlement Agreement*

Smith & DeBonis argue that the waiver in the *Guzman* Settlement Agreement authorizes its representation of the Plaintiff in this case. In contrast, the Defendants argue that the terms of the *Guzman* Settlement Agreement, to which the City was not a party, carve out conflicts such as those presented here.

The operative language in the Agreement provides: " . . . however, that this waiver shall not apply, if and in the event the interest of the City or District would be compromised or jeopardized by counsel's use of any privileged or confidential information he acquired during and by means of, his former representation of either the City or the District." Def. Br., Exh. E. Based on the analysis above in the finding that Smith & DeBonis' representation of the Plaintiff in this matter is substantially related to its prior representation of the City in certain police-related matters, the City's interests would be compromised or jeopardized in this matter by the use of any privileged or confidential information acquired by Smith & DeBonis during that prior representation.

Unlike the decision not to disqualify the firm in the previous employment cases, Smith & DeBonis attorneys have specific knowledge of the City's training policies and programs and the City's defenses to claims of failure to train and likely have knowledge regarding specific individual police officers and/or knowledge of how the City defended against claims brought against its officers, even if the officers were different from those involved in the present suit. Again, in their brief in opposition, Smith & DeBonis' argument that the waiver is applicable to this representation does not address the specific police-related facts of this case, instead discussing the issues raised in the employment cases.

Accordingly, the waiver in the *Guzman* Settlement Agreement is inapplicable in the current representation of the Plaintiff by Smith & DeBonis due to the exception clause within the waiver, and the waiver does not preclude disqualification in this case.

### B.  Motion for Protective Order

The Defendants ask that the Court enter an order prohibiting Smith & DeBonis and its individual members from speaking to any plaintiff, any other law firm, or individual attorney regarding the substance of the claims raised in this matter.  As the attorneys of Smith & DeBonis are sworn officers of the court bound by the ethical rules of conduct and in light of the Court's ruling disqualifying the firm of Smith & DeBonis and its attorneys from representing the Plaintiff in this matter, the Court denies without prejudice the motion for protective order as unnecessary at this time.

### C.  Motion for Discovery & Motion for Stay

As alternative relief, the Defendants seek an Order of the Court authorizing discovery on the extent to which Attorney DeBonis and Smith & DeBonis have and use privileged and confidential information obtained in their prior representation of the City in their current representation of the Plaintiff in this case.  Because the Court has granted the Motion for Disqualification, the Court denies as moot the Motion for Discovery.

The Defendants also request that the Court stay these proceedings pending the resolution of the issue of disqualification.  Through the date of this ruling, the Court has postponed the scheduling conference in this matter in order that the parties not be required to plan discovery pending a ruling

on the issue of disqualification. Now that the Court has granted the Motion for Disqualification and denied the other relief sought by the Defendants, the Court denies as moot the Motion to Stay Proceedings.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** the Motion to Disqualify the Law Firm of Smith & DeBonis, LLC [DE 14-1], **DENIES without prejudice** the Motion for Protective Order [DE 14-2], and the **DENIES as moot** the Motion for Discovery on the Extent of Confidential and Privileged Information Obtained in Prior Representations [DE 14-3] and the Motion to Stay Proceedings [DE 14-4].

The Court **SETS** this matter for a telephonic scheduling conference, to be initiated by the Court, on **March 2, 2006, at 9:30 a.m**. The parties are **ORDERED** to submit a revised proposed discovery plan in accordance with Federal Rule of Civil Procedure 26(f) by **February 27, 2006.** The Plaintiff shall have new counsel, if any, enter an appearance prior to the scheduled telephonic conference.

SO ORDERED this 11th day of January, 2006.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATE DISTRICT COURT

cc:  All counsel of record